0 ’Connell, J.
This cause is submitted on a general demurrer to relator’s petition. ■
The petition alleges that the National Council of the Daughters of America of the United States of North America is a voluntary association without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit. It alleges further that it has a lodge system with ritualistic form.of work and representative form of government, and that it makes provision for the payment of death benefits to its members and their beneficiaries.
These allegations of fact — confessed by the demurrer to be true — clearly bring this association within the class known as “fraternal beneficiary associations” as defined by Section 1 of the act of the General Assembly of Ohio, passed April 26, 1904 (97 O. L., 421). This is “an act regulating fraternal beneficiary associations,” and is the latest enactment on the subject.
It appears further from the allegations of the petition that the plaintiff association has been- engaged in transacting its business in Ohio since 1891, with a membership within this state of more than eleven thousand. It appears further that they complied with the preliminary steps required by Section 12 of said act, prior to making their request of the defendant for a charter.
Copies of its constitution and by-laws, forms of application for benefit certificates, and the other necessary forms for conducting its affairs in lawful method are annexed to the petition, and show, not only complete compliance with the laws of the state, but discloses patriotic and praiseworthy principles as underlying the proposed corporation.
The requisite bond was also tendered with the articles of incorporation as presented to the superintendent of insurance.
The petition alleges that on the — day of September, 3909, the superintendent rejected said articles of incorporation and refused to certify and record said articles, and refused to furnish the incorporators with a certificate authorizing said asso *135 ciation to carry out its purposes within the state of Ohio. The petition then makes the following allegation:
‘ ‘ This relator says 'that it is now, and since the year 1891 has been engaged in carrying on said business within the state of Ohio as a voluntary association, and that the only purpose in seeking to be incorporated under and pursuant to-the laws of the state of Ohio, was to perpetuate in the form of a corporation the business heretofore described, which it had been doing and is still doing as a volunatry association.”
The petition then proceeds to recite the damage resultant from the superintendent’s refusal, and prays that a writ of mandamus may issue against the defendant, commanding him to certify and record the articles of incorporation, and to furnish relators a certificate authorizing them to transact their business and to carry out their purposes within the state of Ohio.
In connection with the extract from relators’ petition, quoted verbatim above, is to be borne in mind Section 3235 of the Revised Statutes (Section 8623, General Code), which provides as follows:
“Except for carrying on professional business, a corporation may be formed for any purpose for which natural persons lawfully may associate themselves.”
It appears from the proposed constitution of the association that its death benefits are limited to $250, as the maximum on each certificate.
When a plaintiff association, through the averments of its petition and its exhibits, brings itself so completely within the scope of the law, the burden naturally rests upon the defendant to show cause why its prayer should not be granted.
It would be futile to cite authorities to sustain the position that persons who have conducted business in an unexceptionable manner since 1891, as a voluntary association (non-professional in character), can become incorporated to carry on the same business. Such right to incorporation must be conceded, unless there is a plain violation of some provision of the statutes dis *136 closed by the application which is the basis of the petitioner’s request for a charter.
While raising several objections, the defendant superintendent bases his refusal to issue a certificate, as shown by the brief filed on his behalf, chiefly upon the fact (that the relator has not filed a stipulation or statement in some form showing the “rate of regular payments or assessments which shall not be lower for death benefits than those required by the national fraternal congress table of mortality,” this requirement being set forth in Section 9476 of the General Code.
This objection by the superintendent is premature. Under Section 9475 of the General Code, the relator is entitled to its certificate on the showing it has made. It has clearly and with scrupulous care' complied with all the preliminary requirements set out in the chapter (Chapter 4, Division III, Susdivision 1, Insurance upon Persons), up to and including Section 9475, and is therefore entitled to the “preliminary certificate authorizing the association to solicit members as hereinafter provided” (Section 9475).
It is not at this time required to stipulate or announce what its rates of assessments shall be. Such announcement is to be made to the superintendent (according to Section 9476) “upon receipt of such certificate,” i. e., after such certificate has been, issued by the superintendent and received by the association.
However, as the superintendent ■ could again raise the same question when the relator made the returns contemplated in Section 9476, it will be well to dispose of that contention at this hearing.
The question at once suggests itself, what is the “National Fraternal Congress?”
This is the only reference to it in our statutes, so that it may well be characterized as an association unknown to the law. It certainly is not defined under any law.
In their oral argument and in their briefs, counsel advise that it is a voluntary association of fraternal societies unincorporated, but united for the purpose of subserving the interests of its constituent members.
*137 The Legislature is without power to delegate to such a body the right to fix the assessment rates for Ohio fraternal insurance companies. Suppose that through differences of opinion as to questions of policy or management this voluntary association should disband? What would be the standard of rates in such contingency? The statement was further suggested in argument that large numbers of fraternal companies decline to become associated with this congress or recognize its authority or existence.
While this discussion forms no part of the decision of the ease under the general demurrer to the petition as filed, yet as this reason and the clause referred to have been advanced by the superintendent as the basis of his refusal, it is proper to refer to the information furnished by the briefs of counsel.
The General Assembly has the right to legislate on the subject of fraternal insurance, and the safeguards it has thrown about such insurance is indeed commendable, but it has no power to delegate the fixing of insurance rates to an irresponsible body, such as is attempted in Section 9476 referred to. By the term “irresponsible” is not to be understood that the companies represented in this congress are not responsible. On the contrary, many excellent companies are represented in it. But the Congress itself is not such a body as the courts can recognize as the arbiter of the rights of others. Such attempted regulation in Section 9476 is unreasonable and void.
The relator, having complied with all the requirements of the statute, is, under the authority of State, ex rel, v Vorys, Superintendent, 69 Ohio State, 56, entitled to the writ of mandamus as prayed for, and the demurrer should be overruled.